**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ROBERT MILLS,

        Petitioner,

vs.   Case No.   3:11-cv-396-TJC-TEM
                                          3:02-cr-115-TJC-TEM

UNITED STATES OF AMERICA,

        Respondent.

## ORDER

This case is before the Court on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Doc. 1; Crim. Doc. 392),[1] Motion to Request an Evidentiary Hearing Based on Newly Acquired Affidavits (Doc. 8), Motion for Evidentiary Hearing and Discovery (Crim. Doc. 409), and Motion for Leave (Doc. 9). The government filed Motions to Dismiss for lack of jurisdiction (Docs. 6, 10; Crim. Doc. 412)[2] and opposes the relief requested by Petitioner. The Court held a non-evidentiary hearing on January 23, 2014. (Doc. 16). Subsequently, Petitioner filed a Motion for Relief Based on Due Process Violation (Doc. 17), which was effectively a third § 2255 motion, alleging Giglio violations. As the government failed to timely respond, Petitioner then moved for the Court to declare his Motion for Relief unopposed. (Doc. 18). The United States responded, asking this Court

---

[1]   Citations to Petitioner's criminal case are denoted (Crim. Doc.) and citations to petitioner's initial § 2255 motion and corresponding civil case, No. 3:06-cv-315-TJC-TEM, are denoted (Civ. Doc.). Citations to documents filed in support of his current § 2255 are denoted (Doc.).

[2]   The Motion to Dismiss filed as Doc. 10 is identical to Crim. Doc. 412.

to hold those motions in abeyance until it made a ruling on jurisdiction. (Doc. 19). The Court held another non-evidentiary hearing on April 24, 2014. (Doc. 20). Pursuant to Rule 8(a) of the Rules Governing Section 2255 Proceedings, the Court has determined that an evidentiary hearing is not necessary to decide the motions.

I. Background

Petitioner was charged in a two-count indictment for conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) (Count One), and attempting to possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) (Count Two). The jury returned guilty verdicts on both counts, and petitioner's convictions were affirmed by the Eleventh Circuit (Crim. Doc. 280). Petitioner's motions for a new trial (Crim. Docs. 172, 285) were denied by this Court (Crim. Docs. 196, 351), and the denials were affirmed by the Eleventh Circuit (Crim. Docs. 383, 386). A previous Motion to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1) was dismissed with prejudice by Order of this Court (Civ. Doc. 45), the Eleventh Circuit denied a COA (Civ. Doc. 56), and the Supreme Court denied certiorari (Civ. Doc. 57). Additional post-conviction motions were filed by Petitioner and denied by this Court,[3] with the most recent filings being the listed motions.

II. Procedural Default

When considering a § 2255 motion, the Court must hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner

---

[3] See docket in criminal case no. 3:02-cr-00115-TJC-TEM.

2

is entitled to no relief . . . ." 28 U.S.C. § 2255(b). After due consideration of the parties' filings and records from petitioner's criminal and prior civil cases, the Court has determined that it lacks jurisdiction to adjudicate the merits of petitioner's claim.

Normally, a federal prisoner is entitled to file a single § 2255 motion and must seek permission from the Court of Appeals to file a second or subsequent petition. 28 U.S.C. § 2255(h). Petitioner previously filed a § 2255 motion in this Court on April 5, 2006 (Civ. Doc. 1) alleging several claims of ineffective assistance of counsel and, accordingly, was required to obtain permission from the Eleventh Circuit prior to filing additional § 2255 motions. Petitioner failed to do so before filing the instant motion, rendering it procedurally defaulted and relieving this Court of jurisdiction to consider the motion unless another statutory provision excuses the default.

III. Timeliness

Even if this were petitioner's first § 2255 motion, it would be untimely. Section 2255(f) imposes a one year limitations period on the filing of § 2255 petitions, with the period beginning to run from the occurrence of one of four events. Relevant to the instant motion, a petitioner has one year from "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4). Arguably, the "newly discovered evidence" upon which petitioner relies, records from the New Jersey Department of Corrections ("NJ DOC"), showing the incarceration history of petitioner's co-conspirator, El Amin Bashir, was available at or before petitioner's

trial and prior to the filing of his first § 2255 motion.[4] Accordingly, the one-year AEDPA clock did not restart upon petitioner's "discovery" of the documents.

Even assuming, arguendo, that the "discovery" of the NJ DOC records did restart the AEDPA limitations period, petitioner failed to file the instant motion within one year as required by § 2255(f)(4). The cover letters accompanying the NJ DOC records are dated September 18, 2009 (Doc. 2 at 24) and October 14, 2009 (Doc. 2 at 35). Presumably, the letters and records took a few days by mail or courier to travel from New Jersey to petitioner's private investigator located in Hockessin, Delaware, and perhaps even more time elapsed before petitioner himself received the documents or was otherwise made aware of them. However, petitioner waited until April 18, 2011,[5] nearly 18 months later, to file the instant motion. (Doc. 1 at 13.) Petitioner has not alleged extraordinary circumstances entitling him to equitable tolling of the AEDPA limitations period[6] and, upon independent review, the Court finds none. The motion is therefore untimely.

Though the untimeliness of a § 2255 petition was previously a barrier to relief absent excuse for the default, the Supreme Court has now held the untimeliness of a § 2255 petition is merely a factor to be taken into consideration when evaluating a petitioner's claim

---

[4] Petitioner claims he was only able to obtain these records because his private investigator "misused a civil subpoena." (Doc. 2 at 10.) However, the records could have been subpoenaed at any time prior to his trial or direct appeal with ordinary diligence. That the significance of the records was not immediately apparent or no one thought to subpoena them does not excuse the procedural default.

[5] The filing date for AEDPA purposes is the date on which the motion was given to prison authorities. Houston v. Lack, 487 U.S. 266, 276 (1988); (Doc. 2 at 21).

[6] Holland v. Florida, 130 S.Ct. 2549, 2562 (2010).

of actual innocence. McQuiggin v. Perkins, 133 S.Ct. 1924, 1928 (2013). The Court stated that "untimeliness, although not an unyielding ground for dismissal of a petition, does bear on the credibility of evidence proffered to show actual innocence." Id. at 1936.  Accordingly, "a federal habeas court, faced with an actual-innocence gateway claim, should count unjustifiable delay on a habeas petitioner's part, not as an absolute barrier to relief, but as a factor in determining whether actual innocence has been reliably shown." Id. at 1928.

IV. "Actual Innocence"

Petitioner correctly notes that, under the Supreme Court's decision in Schlup v. Delo, a colorable showing of "actual innocence" can excuse procedural default. 513 U.S. 298, 321 (1995). To show that he is "actually innocent" and therefore entitled to further consideration of his defaulted claim, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Schlup, 513 U.S. at 327. The Court further clarified that

> [t]he meaning of actual innocence . . . does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty. It is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses; rather the standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do. Thus, a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.

Id. at 329 (emphasis added).

Although the government contends that the motion must be dismissed without further consideration to allow petitioner to seek permission from the Eleventh Circuit, that Court has

5

previously explained that the district court is the proper venue to consider a petitioner's claim of "actual innocence" because "such factual determinations are best made in the first instance by the district court. Indeed, if . . . the district court determines that [a petitioner] has made a showing of actual innocence, we would prefer to have the benefit of the district court's legal analysis . . . ." Wyzykowski v. Dep't of Corr., 226 F.3d 1213, 1219 (11th Cir. 2000). Accordingly, this Court has considered whether petitioner has made such a showing and, for the foregoing reasons, determined that he has not.

In Rozzelle v. Secretary, Florida Department of Corrections, the Eleventh Circuit discussed at length the type of case in which "a habeas petitioner claims his actual innocence should serve as a gateway to consideration of constitutional claims" that a court would otherwise be barred from reviewing. 672 F.3d 1000, 1010-11 (11th Cir. 2012). The so-called "'Schlup gateway' allows a petitioner . . . to raise[ ] a claim of actual innocence to avoid a procedural bar to the consideration of the merits of his constitutional claims. The 'Schlup gateway' is meant to prevent a constitutional error at trial from causing a miscarriage of justice and the conviction of one who is actually innocent." Kuenzel v. Comm'r, Ala. Dep't of Corr., 690 F.3d 1311, 1314-15 (11th Cir. 2012).

Here, petitioner's § 2255 motion is based on "newly discovered evidence" which he claims shows that he is actually innocent of the crime of conspiracy. A liberal reading of petitioner's motion[7] reveals that, like the petitioner in Herrera, Mills appears to "attempt to

---

[7] Petitioner states "[t]he sole Ground in this petition is based on 'newly discovered evidence' that establishes petitioner is 'actually innocent' of the charged offense of conspiracy," (Doc. 1 at 12); however, courts have a duty to construe pro se filings liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972).

couch his claim of actual innocence in Brady terms," Herrera v. Collins 506 U.S. 390, 397 (1993), and violations of due process. (See, e.g., Doc. 2 at 7 ("This newly discovered evidence establishes a due process violation . . . ."); id. at 8 ("The government did not provide the defense with Bashir's prior incarceration history, ever."); id. at 9 ("[T]he government did not produce this evidence to the defense.")).[8] Though the Court believes that petitioner's motion alleges merely a "freestanding" claim of actual innocence, for purposes of this Order and to aid any future review of its decision, the Court will assume petitioner has alleged constitutional violations that may warrant additional consideration. The relevant question, then, is whether petitioner has in fact made a colorable showing of "actual innocence."

A. The Merits of Petitioner's Claim

At trial, Augustus Tucker, a jailhouse informant testified that Petitioner admitted to being in a drug business with Bashir, wherein they would often use Georgians to transport drugs back and forth. (Doc. 17 at 2).

The basis of petitioner's actual innocence claim is newly discovered evidence in the form of records from the NJ DOC showing co-defendant Bashir's incarceration history. In

---

[8] Petitioner has not explained how the government's failure to disclose Bashir's prison records resulted in a violation of his due process rights, and to the extent that he makes a Brady-type claim, were the Court to proceed to a merits review, such a claim would also likely fail: The Eleventh Circuit has held that the government has no duty to produce information when a defendant has "equal access" to it, Maharaj v. Secretary, Department of Corrections, 432 F.3d 1292, 1315 n.4 (11th Cir. 2005), and similarly determined there is no Brady violation where the defendant could have subpoenaed a witness's jail records, Mills v. Singleterry, 63 F.3d 999, 1019 (11th Cir. 1995).

petitioner's view, the records are "the functional equivalent of an alibi defense in establishing that Mills and his alleged coconspirator could not have possibly been confederated during the time frame alleged . . . ." (Doc. 2 at 14.) He also contends "[t]his case is unusual in that the newly discovered evidence, in and of itself, establishes that Mills could not have known his alleged coconspirator, Bashir, for a very long period of time prior to this case because Mills would have been aware of the contents of the [NJ DOC] document and its exculpatory value and used it to exonerate himself long ago." Id. at 9. In support of his position, petitioner cites United States v. Della Croce, 502 F.Supp. 1080 (S.D.Fla. 1980), a case in which the district court granted a Rule 29 motion for judgment of acquittal based on prison records that contradicted eye-witness testimony and supported the defendant's alibi defense.

In Della Croce, the defendant faced a RICO conspiracy charge and the only evidence of his purported criminality was the testimony of a witness claiming that the defendant was present at a restaurant meeting in 1974 at which he allegedly ordered someone to commit murder. Id. at 1081. Prison records established that the defendant had been incarcerated from 1973 to 1976, and there was no evidence to suggest he received a furlough, escaped, or could have otherwise attended the meeting. Id. at 1083.

Unlike Della Croce, and despite petitioner's claim that "[a]bsent this uncorroborated testimony of the post arrest jailhouse informant witness [Tucker] . . . the record is devoid of any evidence, whatsoever, to support a conclusion that Mills' conduct legally qualified him as a 'conspirator' as charged," (Doc. 8 at 4), there was other evidence from which the jury could have determined his guilt: recorded conversations in which petitioner could be heard

discussing drug transactions and the testimony of undercover government agents and confidential sources in addition to Tucker's testimony. Petitioner himself recounts the multitude of evidence before the jury, though he disagrees that it was sufficient to sustain his conviction for conspiracy.[9] Thus, when viewed in totality, even if Tucker's testimony had been called into question or somehow impeached with the NJ DOC records, petitioner has failed to show that no juror, acting reasonably, would have found him guilty.

Petitioner claims Bashir's records establish "that the only time the 2 men were on the street simultaneously was approximately 1 ½ months between 1990 and the inception of this case,"[10] (Doc. 2 at 9), but these records do not show that it would have been impossible for the two men to have conspired during April 2002 as alleged in the Indictment. (Crim. Doc.

---

[9] Petitioner claims that "tape #13 and #14 casts Mills in the role of 'facilitating' a drug deal between a willing buyer and a willing seller, for a fee from the seller. . . . In tape #13 the government informant . . . clarifies that he has 'agreed' with Mills to 'front' Mills 5 kilograms of cocaine for providing a 'customer' [Bashir] to buy 10 kilograms." (Doc. 2 at 16.) Furthermore, petitioner notes that the informant "testified that Mills would get '$10,000[ ]' in cash and '5 kilos fronted' to him for his role in facilitating the 10 kilogram purchase between the government agent . . . and Bashir. [The u]ndercover DEA agent . . . acting as the drug supplier, testified that Mills was sending him a 'customer' to purchase cocaine and that Mills' agreement was to be compensated for this. . . ." Id.

[10] A comparison of Bashir's prison records and petitioner's representations about his own incarceration history reveals that it also appears neither Mills nor Bashir was imprisoned between August 2000 and October 4, 2001. (See Doc. 2 at 8.) That both men were on the street at this time–and knew each other–is further supported by the affidavit of Lamel Blakeley, submitted by petitioner, which stated that he "first met Robert Mills in or about late 2000 at Planet Earth Footwear" and "[s]everal months after Mr. Mills began working at Planet Earth, El-Amin Bashir was hired and began working . . . ." (Doc. 8 at 16.) It is certainly possible, then, that Mills and Bashir could have had previous drug dealing enterprises, which would be consistent with Tucker's testimony.

1 at 1.) Furthermore, as the government contends, the NJ DOC records do nothing to discredit the testimony on its face, particularly because they do establish the two men were on the street simultaneously, even if for a relatively brief period of time. (See Doc. 10 at 9 ("[E]ven if true, this does not support Mills' illogical conclusion that these dates disprove the fact that between April 11 and 17, 2002, Mills (and Bashir, Ali, and others known and unknown) conspired to possess with intent to distribute multi-kilogram quantities of cocaine.")).

Since the records do not conclusively refute the allegations in the Indictment, even assuming they would have been considered by the jury,[11] the Court turns to Mills' contention that the records prove that Tucker offered false testimony. Petitioner correctly notes that the Court of Appeals identified Tucker's testimony as that which "demonstrated that the coconspirators worked together in a continuing drug dealing enterprise that resulted in the violations charged in the Indictment," (Crim. Doc. 20 at 16), but petitioner has not shown that the testimony was untrue. Furthermore, though the Eleventh Circuit did refer to it as "integral," (Crim. Doc. 280 at 6), Tucker's testimony was not the "sole" evidence, and the mere existence of the NJ DOC records does not negate the testimony or render it inadmissible; the jury still would have heard Tucker's testimony.

As such, Mills overstates the importance of Bashir's prison records based on an

---

[11] "In assessing the adequacy of petitioner's showing . . . the district court is not bound by the rules of admissibility that would govern at trial. Instead, the emphasis on 'actual innocence' allows the reviewing tribunal also to consider the probative force of relevant evidence that was either excluded or unavailable at trial." Schlup, 513 U.S. at 327-28.

inflated valuation of impeachment evidence and an apparent subscription to the belief that a conspiracy necessarily requires an ongoing criminal enterprise, drawn out over long periods, a position neither supported by precedent[12] nor alleged in the Indictment. The jury was presented with sufficient evidence from which it could have found that petitioner entered into a conspiracy to distribute controlled substances; both petitioner's and the government's recitation of the facts are basically consistent.[13] The only thing actually in dispute is the effect

---

[12] To find a defendant guilty of conspiracy requires only a determination that an illegal agreement existed, the defendant knew of it, and knowingly and voluntarily participated in it. United States v. McDowell, 250 F.3d 1354, 1365 (11th Cir. 2001). Furthermore, the jury in petitioner's criminal case was instructed that

[w]hat the evidence in the case must show beyond a reasonable doubt is:
First: That two or more persons in some way or manner, came to a mutual understanding to try to accomplish a common and unlawful plan, as charged in the indictment; and
Second: That the Defendant, knowing the unlawful purpose of the plan, willfully joined in it.

(Crim. Doc. 148 at 12).

[13] As the government summarizes,

[Confidential informant] Hall began recording incriminating telephone conversations wherein Mills was attempting to coordinate the purchase of multi-kilogram quantities of cocaine for distribution. These recordings captured Hall (cooperating with DEA) and Mills arranging to have their respective representatives meet each other in Jacksonville, Florida. Mills' representative was co-defendant El Amin Bashir . . . . Bashir's subsequent presence at the arranged meeting is direct evidence that Mills and Bashir were working together to obtain cocaine for distribution

.

(Doc. 10 at 4.) Additionally, "Mills assured Hall that Mills was providing an opportunity for Hall to participate in a lucrative long-term venture to supply multiple states with large quantitites of cocaine, and that Mills would coordinate its distribution through Mills' established contacts in those states." Id. at 5. Compare id. with note 7, supra.

of Bashir's NJ DOC records on the quantum of evidence presented at trial.

The government correctly contends the NJ DOC records "do nothing to rebut the recorded conversations of Mills and Hall, or Mills' subsequent dispatch of Bashir to finalize details of a large-scale drug deal, and conversations [alluding] to future drug deals." (Doc. 10 at 11.) Even if petitioner were correct in asserting that there was no direct evidence of a conspiracy without Tucker's testimony, the Eleventh Circuit has explained that conspiracies are by nature clandestine, secretive, and often proved by entirely circumstantial evidence since conspirators rarely, if ever, enter into any kind of formal agreement. United States v. Glinton, 154 F.3d 1245, 1258 (11th Cir. 1998).

The NJ DOC records represent impeachment material at best, a proposition recognized by petitioner himself. (See Doc. 2 at 14 ("The alibi created by the newly discovered evidence (i.e. prison records) impeaches Tucker . . . .")). The Court is therefore left to infer that maybe petitioner would have attempted to use the records to impeach Tucker's credibility[14] – although, as the government points out, maybe not, since alluding to both men's extensive criminal histories may not necessarily have been in petitioner's best interest. (See Doc. 10 at 11-12.) Petitioner is left with only the possibility the jury might have considered the NJ DOC records and whether they affected Tucker's credibility.[15] In courts

---

[14] Whether the records themselves would have been introduced is a matter of trial strategy reserved for defense counsel to decide after consultation with his client. Jones v. Barnes, 463 U.S. 745, 753 n.6 (1983)("[S]trategic and tactical decisions are the exclusive province of the defense counsel, after consultation with the client.")(citing ABA Standards for Criminal Justice 4-5.2 (2d ed. 1980)).

[15] The jury in petitioner's criminal case was given pattern instructions on evaluating the credibility of witnesses and impeachment. (Crim. Doc. 148 at 5, 6.)

of the Eleventh Circuit, "impeachment is not a proper justification for granting a new trial based on newly discovered evidence." United States v. Morrison, 218 Fed. Appx. 933, 946 (11th Cir. 2007); United States v. Thompson, 422 F.3d 1285 (11th Cir. 2005).

In fact, the "'new' evidence must do more than counter-balance the evidence that sustained the petitioner's conviction," Rozzelle, 672 F.3d at 1016-17, or merely suggest "that a reasonable doubt exists in light of the new evidence," Schlup, 513 U.S. at 1329. "Credibility determinations fall within the exclusive province of the jury unless the testimony is 'incredible as a matter of law'" or the newly discovered evidence renders "testimony unbelievable on its face." United States v. Johnson, 379 Fed. Appx. 964, 970 (11th Cir. 2010)(quoting United States v. Calderon, 127 F.3d 1314, 1315 (11th Cir. 1997)). Because Bashir's NJ DOC records do not render Tucker's testimony "incredible as a matter of law" or "unbelievable on its face," they do not rise to the level required for a threshold showing of "actual innocence."

B. "Actual" versus "Legal" Innocence

Even if this Court were to determine that further review of petitioner's "actual innocence" claim was permissible, his arguments assert mere "legal innocence" rather than the requisite factual innocence. See Gonzalez v. Sec'y, Dep't of Corr., 366 F.3d 1253, 1274 (11th Cir. 2004)("Actual factual innocence is required; legal innocence is not enough."). "Actual innocence," courts have determined, involves claims in which the petitioner denies any wrongdoing or involvement in criminal activity whatsoever, or is able to produce evidence calling into question forensic analysis, House v. Bell, 574 U.S. 518, 554 (2006), or evidence in the form of eyewitness statements that the defendant was not involved in the

crime, Schlup, 518 U.S. at 331, or evidence of similar import evincing the quintessential situation "where the State has convicted the wrong person of the crime." Sawyer v. Whitley, 505 U.S. 333, 340 (1992). Other situations, such as where a defendant argued he lacked the requisite mens rea or that he should have been convicted of a lesser degree of crime, involve claims of legal rather than factual innocence and are therefore not claims of "actual innocence" that entitle a petitioner to proceed beyond a procedural bar. See Rozzelle, 672 F.3d at 1012. Petitioner's claim is one of legal innocence.

Citing interests in finality and conservation of judicial resources, "the Supreme Court has cautioned the lower courts to 'exercise restraint when determining whether to expand the exceptions to the procedural default rule.'" Rozzelle, 672 F.3d at 1015-16 (citing McKay v. United States, 657 F.3d 1190, 1198 (11th Cir. 2011)). In that vein, "[a]llowing claims of actual innocence to be brought whenever a habeas petitioner argues that he was convicted of an erroneous degree of crime . . . would substantially expand the scope of the actual innocence exception." Id. at 1016.[16]

Here, petitioner does not disclaim any wrongdoing or contend that the government

---

[16] To the extent that petitioner cites cases in support of his claim that he was merely a "facilitator," that argument is procedurally barred because he failed to raise it in an earlier proceeding. McKay, 657 F.3d at 1196. Instead, Mills chose to rely on an entrapment defense at trial and argued sufficiency of the evidence on direct appeal. Petitioner also did not contend, even in his initial § 2255 motion which alleged several grounds of ineffective assistance of counsel, that his attorney disregarded his instructions or otherwise failed to assert a facilitation-based defense. Even if he had made such a post-conviction claim, strategic decisions are reserved for counsel. See Jones v. Barnes, 463 U.S. at 753 n.6. Furthermore, even if petitioner argued that the "new" NJ DOC records provided the first basis for asserting a facilitation defense, he is barred from raising that claim for the first time in this motion.

prosecuted the "wrong man." Instead, petitioner claims that he was merely a "facilitator" of the drug transaction, and that the NJ DOC records, along with the fact that the government offered petitioner the chance to plead guilty during jury deliberations to the lesser offense of facilitation of a drug crime by telephone, support his theory. (See Doc. 2 at 19 ("Relevant, if not dispositive, to the Court's analysis is the fact that during jury deliberations, after the second jury deadlock, the government offered Mills to plead guilty to facilitation of a drug crime via use of the telephone, pursuant to 21 U.S.C. § 843(b).")). His argument is therefore one of legal, rather than actual, innocence, and his motion does not survive the procedural bar.

VI. Conclusion

Petitioner has not shown a colorable claim of "actual innocence" to excuse his procedural default, and his case is not the "exceptional" or "rare" case requiring that his claim be permitted to pass through the Schlup gateway to a full merits review. As the Supreme Court in Herrera explained, "[p]etitioner in this case is simply not entitled to habeas relief . . . . For he does not seek excusal of a procedural error so that he may bring an independent constitutional claim challenging his conviction or sentence, but rather argues that he is entitled to habeas relief because newly discovered evidence shows that his conviction is factually incorrect." 506 U.S. at 404-05. The instant motion is therefore barred as successive. This Court has no jurisdiction to further entertain its merits.

Since this Court has no jurisdiction to hear the § 2255 motion, Petitioner's motions for an evidentiary hearing and discovery (Docs. 8, 9; Crim. Doc. 409) are also due to be denied. The Court also therefore lacks jurisdiction to consider Petitioner's Motion for Relief

Based on Due Process Violation (Doc. 17).

To the extent that Petitioner's Motion for Relief Based on Due Process Violation (Doc. 17) is an attempt to bring a third § 2255 motion, it is barred for the same reasons as the second petition. It is a successive petition, filed without permission from the Court of Appeals. Petitioner seeks to evade this hurdle by stating that he is bringing forward a claim of actual innocence. (Doc. 17 at 1). However, his claim revolves around the same prison records and testimony as discussed above, and fails for the same reasons. (Doc. 17 at 1-5). None of the additional facts and argument presented in the motion relate to new evidence or demonstrate in any way why Petitioner's motion is not untimely. Instead, the motion suggests once again that Petitioner's claim is one of legal innocence. Even taking Petitioner's claim as one of actual innocence, he has not demonstrated that no reasonable juror could have found him guilty beyond a reasonable doubt.

Because of the length of Petitioner's minimum mandatory sentence (20 years), the unusual nature of this case, and the government's pre-verdict willingness to allow Petitioner to plead to a crime which carried a 4-year maximum, the Court has felt a special obligation to search the record and the applicable law to discern whether Mills has any basis for relief. The Court appointed able counsel to represent Mills, has considered multiple pleadings, and conducted two hearings. The Court now concludes that there is no basis for relief.

Accordingly, it is hereby

**ORDERED**:

1. The government's Motion to Dismiss (Doc. 6) is **GRANTED**. Petitioner's § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Doc. 1) is **DISMISSED** without prejudice

so he may seek permission from the Eleventh Circuit to file a successive petition. The Clerk should send the successive petition form to counsel for Petitioner.

2. Petitioner's Motion for Evidentiary Hearing (Doc. 8), Motion for Leave (Doc. 9), Motion for Evidentiary Hearing and Discovery (Crim. Doc. 409), Motion for Relief Based on Due Process Violation (Doc. 17), and Motion Requesting the Court to Declare Defendant's Motion As Unopposed (Doc. 18) are **MOOT** as this Court lacks jurisdiction to hear the case.

3. The government's Motion to Dismiss petitioner's request for an evidentiary hearing and discovery (Doc. 10; Crim. Doc. 419) and Motion to Hold Motions in Abeyance (Doc. 19) are **MOOT**.

4. The Court greatly appreciates the service of court-appointed counsel.

5. The Clerk should close the file.

**DONE AND ORDERED** at Jacksonville, Florida this 14th day of July, 2014.

                                                      */s/ Timothy J. Corrigan*
                                                      TIMOTHY J. CORRIGAN
                                                      United States District Judge

w.
Copies:

counsel of record
pro se party